```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

DONALD V. MADDEN,                :
                                 :
    Plaintiff,                   :
                                 :
vs.                              :
                                 :   CIVIL ACTION 14-0289-M
CAROLYN W. COLVIN,               :
Social Security Commissioner,    :
                                 :
    Defendant.                   :

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18).  Oral argument was waived in this action (Doc. 19).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was fifty years old, had completed a seventh-grade education (Tr. 95), and had previous work experience as a contractor, electrical helper, material handler, and security guard (Tr. 121).  In claiming benefits, Madden alleges disability due to Diabetes Mellitus, peripheral neuropathy, diabetic dynamic visual changes, and chronic obstructive pulmonary disease (hereinafter *COPD*) (Doc. 13 Fact Sheet).

The Plaintiff filed a protective application for SSI on February 14, 2011 (Tr. 217-26; *see also* Tr. 77, 140).  Benefits were denied following a hearing by an Administrative Law Judge (hereinafter *ALJ*) who determined that although he could not return to his former work, there were light jobs that Madden could perform (Tr. 77-86).  Plaintiff requested review of the hearing decision (Tr. 71-72) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not

supported by substantial evidence.  Specifically, Madden alleges that:  (1) The ALJ did not properly consider the opinions of his treating physician; (2) the ALJ failed to recognize certain findings made by a physician whose opinion was given significant weight; (3) the ALJ improperly discredited his testimony; and (4) the residual functional capacity (hereinafter *RFC*) is without evidentiary support (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The relevant evidence of record follows.[1]

On May 12, 2010, Robert E. Edge, O.D., examined Madden's eyes and found that the best correction in both was 20/50 for distance and 20/40 for close work; the Doctor could not explain why vision was not closer to 20/20 (Tr. 424-26).  Plaintiff had useful binocular vision in all directions for distance; Edge found that, in spite of Madden's diabetes, there was no retinopathy.  The Doctor stated the ocular exam was normal.

On April 9, 2011, Dr. Thomasina Anderson-Sharpe,[2] a family practitioner with the Mobile County Health Department

---

[1] The Court notes that although Madden claims that his disability began on March 1, 2006 (Tr. 217; *see also* Tr. 77), in his brief before this Court, Plaintiff cites no evidence prior to May 12, 2010 (Doc. 13, p. 3).  The Court will begin with that evidence.

The Court further notes that Madden submitted evidence to the Social Security Administration following the ALJ's decision (Tr. 7-70).  The Appeals Council found this evidence to concern a later time than the period considered by the ALJ and did not review it (Tr. 2).  Plaintiff has not challenged that decision (*see* Doc. 13), so the Court will not consider that evidence.

[2] Later records refer to the Doctor as Sharpe, not Anderson-Sharpe (Tr. 476), so the Court will refer to her now only as Dr. Sharpe.

(hereinafter *MCHD*), examined Madden for diabetes and pain in his joints and muscles, especially in his legs; he stated that he managed his daily activities and could do any house or yard work, though it tired him (Tr. 434-37).  Madden smoked a pack a day; Dr. Sharpe noted breath sounds throughout.  Plaintiff had normal gait, heel gait, and tandem gait, but no toe gait; straight leg raise was negative.  Madden had full motor and grip strength bilaterally, muscle bulk, and tone; he had decreased sensation in both feet.  The Doctor made the follow diagnosis: (1) uncontrolled type 2 diabetes with peripheral neuropathy, insulin dependent; (2) leg and foot pain secondary to #1; (3) visual changes secondary to #1; (4) COPD; (5) Hypertension; and (6) Hyperlipidemia.

On June 9, 2011, Madden went to MCHD to get prescriptions refilled; he was experiencing no pain (Tr. 438-40).  Plaintiff was oriented and in no acute distress; sensory and motor exams were normal.  Madden was encouraged to stop smoking.

On August 18, 2011  Dr. Sharpe completed a Physical Capacities Evaluation indicating that Plaintiff was capable of sitting for two and standing/walking for less than one hour at a time but capable of sitting for six and standing/ walking for two hours during the course of an eight-hour workday (Tr. 453). Dr. Sharpe found that Madden could lift twenty pounds frequently and twenty-five pounds occasionally and was able to carry up to

4

ten pounds frequently and twenty-five pounds occasionally. Plaintiff could use his hands for simple grasping, fine manipulation, and pushing and pulling of arm controls; he could not use his feet for repetitive movements.  Dr. Sharpe indicated that Madden could occasionally bend, squat, crawl, and climb and could frequently reach; he was moderately restricted in working at unprotected heights, being around moving machinery, driving automotive equipment, and being exposed to dust, fumes, and gases and totally restricted in being exposed to marked changes in temperature and humidity.  On August 19, 2011, Dr. Sharpe completed a form finding that Madden's pain would frequently distract him from adequately performing work activities and that medications taken for the pain would cause side effects, limiting his effectiveness (Tr. 454).

On August 19, Dr. Sharpe examined Plaintiff who was still smoking daily; he reported not feeling tired or poorly and suffered pain at one on a ten-point scale (Tr. 462-64).  The Doctor noted that Madden was in no acute distress and that respiration rhythm and depth were normal without wheezing, rales, or crackles.  Without being specific, abnormalities were noted in the leg, feet, and toes; there was decreased sensation in both feet.  Sharpe encouraged Plaintiff to quit smoking and adjusted some of his medications.  On October 18, 2011, the Doctor examined Madden who was seeking prescription refills; she

noted that he was noncompliant with her medical regimen and was out of his insulin (Tr. 459-60). Plaintiff reported not feeling tired or poorly; he rated his pain as one. Respiration was normal. In her assessment, the Doctor noted that his diabetes was poorly controlled, stating that his therapy noncompliance was due to cost; Celebrex was prescribed.[3] On January 12, 2012, Madden reported impotence and pain at level one; prescriptions were written (Tr. 457-58). On February 15, Sharpe noted that he continued to take impotence medications she had discharged; he reported having no pain (Tr. 455-56).

On February 15, 2012, Dr. Navjeet Singh, a non-examining physician, completed a physical RFC questionnaire indicating that Madden was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently; he could stand or walk for two hours and sit for six hours during an eight-hour day (Tr. 300-05). Plaintiff was unlimited in his ability to use foot and hand controls; he could occasionally climb, balance, stoop, kneel, crouch, and crawl. Singh indicated that he should avoid concentrated exposure to working around machinery or heights.

On April 19, 2012, Dr. Sharpe examined Madden for a

---

[3]**Error! Main Document Only.** *Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk Reference* 2585-89 (58th ed. 2004).

medication consult; he reported that he was still smoking but was in no pain (Tr. 475-76). Respiration rhythm and depth were normal with no wheezing, rales, or crackles; a motor exam demonstrated no dysfunction.

On June 28, Dr. Gregory Evans, with the MCHD, examined Plaintiff who was seeking prescription refills; Madden reported being in no pain (Tr. 486-88). Respiration was normal; motor and sensory exams revealed no abnormalities. The Doctor's diagnosis was uncontrolled diabetes mellitus with hypersmolarity and peripheral neuropathy. Chest x-rays showed that the lungs were clear with no edema or pleural fluid (Tr. 511). On July 3, MCHD records show Madden complaining of pain at level six; no examination was conducted (Tr. 483-85). On September 11, a CRNP reported that Plaintiff was seeking prescriptions; he was still smoking and was moderately exercising less than three times a week (Tr. 479-82). Madden was not feeling tired or poorly and reported having no pain. Respiration was normal; no motor or sensory exam abnormalities were noted. Plaintiff admitted that he was noncompliant with his care plan; he was encouraged to quit smoking and to adhere to treatment. One week later, Madden was in no acute distress and reported no pain; Dr. Elmo Ozment noted nothing out of the ordinary (Tr. 477-79).

At the evidentiary hearing before the ALJ, Madden testified that he did not work because he could hardly see; though he wore

7

readers, he did not wear distance glasses because they did not help and no one would buy them for him (*see, generally*, Tr. 94- 115). Plaintiff was unaware of organizations that help provide glasses to people. He drove some, but very little. He and his mother lived together and helped each other out. Madden could sit for two hours before his legs, hands, and feet got numb; the numbness in his legs caused him to fall a lot. Plaintiff could haul the garbage out, wash the car, and do other odds and ends around the house; he could walk two hundred yards, but would then have to sit down. He could not button his shirt collar or put in cufflinks because of finger numbness. He works in his rose garden about thirty minutes a week; he has seven acres of land to mow with a riding mower twice a year. Madden rarely left the house. He has diabetes and had to take five or six shots a day for it; the diabetes kept him from working. He could walk for thirty-five minutes before his back and legs hurt so much he had to sit down. Madden has back problems because of a work accident. He admitted not following his medical regimen— eating properly, taking his medicine, and exercising—but said it was because he was depressed at his inability to work. Madden could shop for groceries, clean the bathroom, and do some housework. This concludes the relevant evidence of record.

In bringing this action, Madden first claims that the ALJ did not properly consider the opinions of his treating doctor,

8

Dr. Sharpe (Doc. 13, pp. 8-12).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[4] *see also* 20 C.F.R. § 404.1527 (2014).

In her determination, the ALJ summarized the evidence of record and then explained her credibility determinations.  She gave little weight to Dr. Sharpe's conclusions, finding them internally inconsistent and inconsistent with the other evidence of record (Tr. 84).

The Court finds substantial support for the ALJ's conclusion.  In arguing that the ALJ was wrong, Madden has pointed to one date, August 19, 2011, when Sharpe noted abnormalities in the foot, lower leg, and toes as well as decreased sensation in both feet (Doc. 13, p. 9).  The balance of that particular argument points only to diagnoses of diabetic peripheral neuropathy, albeit by different examining physicians.

The Court notes that Sharpe reported no similar abnormalities in her examinations of October 18, 2011 (Tr. 459-

---

[4]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

60), January 12, 2012 (Tr. 457-58), February 15, 2012 (Tr. 455-56), or April 19, 2012 (Tr. 475-76).  Plaintiff points to no other medical evidence of these abnormalities.  Madden's assertion that a one-time notation of medical imperfection, buoyed by a diagnosis repeated by MCHD's multiple examiners, falls very short of the evidence required to find that the ALJ's decision is in error.

The Court notes that Plaintiff engages in similar arguments regarding Dr. Sharpe's findings regarding Madden's COPD, his ability to reach, and his pain and the effects of his medications (Doc. 13, pp. 9-12).  Again, though Madden suffers the severe impairments of COPD and peripheral neuropathy, as found by the ALJ, the diagnoses alone are insufficient to demonstrate an inability to work.  Dr. Sharpe's notes, as well as the records of other examining sources, regularly report that Plaintiff had no trouble breathing, had normal physical examinations, and that he claimed no pain or medication side effects.  Plaintiff's claim that Dr. Sharpe's conclusions were not properly considered is without support in this record.

Next, Madden claims that the ALJ failed to recognize certain findings made by a physician whose opinion was given significant weight.  Dr. Singh had found that Madden could walk only two hours during an eight-hour period and that he could only occasionally stoop.  Plaintiff questions how the ALJ's

10

rejection of these findings by Dr. Singh can be reconciled with the ALJ's conclusion that the overall opinion should be given significant weight (Doc. 13, pp. 13-14).

In pointing only to medical diagnoses, Madden again fails to persuade the Court of the ALJ's error.  There is no evidentiary support, save for Plaintiff's own testimony, for the limitations sought in this argument.  This claim lacks merit.

Madden next claims that the ALJ improperly discredited his testimony of pain, the side effects of his medications, and his functional limitations (Doc. 13, pp. 18-20).  The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761

11

F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2014).

The Court finds that the ALJ properly rejected Plaintiff's testimony as unsupported by the medical evidence and because of his failure to comply with prescribed medical treatment (Tr. 81-82).  Madden repeatedly reported that he was experiencing no—or very minimal—pain to his examining physicians; likewise, medical records do not show that he complained of medication side effects.  This record is devoid of objective medical evidence to support this claim.

Madden's final claim is that the RFC is without evidentiary support.  Plaintiff specifically points to the ALJ'S findings,

12

in the RFC, that he should have a sit/stand option and that five percent of the time he would be non-productive (Doc. 13, pp. 15-18).

The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2014).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

In the RFC determination, the ALJ found that Madden "should be allowed to alternate between sitting and standing at his workstation on an occasional basis;" the ALJ stated that this was an accommodation to Plaintiff's diabetes and diabetic neuropathy (Tr. 80, 83).  The ALJ also found that Plaintiff could "be expected to be off task or to work at a nonproductive pace up to 5% of the workday;" the ALJ stated that this was "to accommodate any residual pain, weakness, fatigue, and medication side effects" (Tr. 80, 83).

In bringing this claim, Madden argues that the ALJ has failed to link these findings to specific medical evidence.  The Court finds that Plaintiff is not wrong in this argument, but not for the reasons asserted.  While no record medical source specifically suggested a sit/stand option or that an employer

could expect Madden to be productive only 95% of the time, Madden's own testimony is that he cannot work at all; the Court found no support for that assertion.  Dr. Sharpe suggests limitations that enjoy no objective evidentiary support even in her own medical records.  The ALJ's accommodations to Madden's claimed limitations are not a basis for finding error in her determination that he can work.  This claim is without merit.

Madden has raised four different claims in bringing this action.  All are without evidentiary support.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 28th day of January, 2015.


                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE